Glenn **JAREMA**, Plaintiff–Appellant,

v.

**OLIN CORPORATION**, Defendant–Appellee.

No. 92–1102.

United States Court of Appeals, Sixth Circuit.

Argued Nov. 9, 1992.

Decided Aug. 27, 1993.

Rehearing Denied Sept. 28, 1993.

---

Paul Kullen (argued and briefed), Meklir, Schreier, Nolish & Friedman, Southfield, MI, for plaintiff-appellant.

Patrick McLain (argued), Janice A. Furioso (briefed), Kerr, Russell & Weber, Detroit, MI, for defendant-appellee.

Before: BOGGS and SUHRHEINRICH, Circuit Judges; and WELLFORD, Senior Circuit Judge.

BOGGS, Circuit Judge.

The plaintiff, Glenn Jarema, alleges that he was wrongfully discharged for conducting an affair with a subordinate and appeals from a grant of summary judgment to defendant Olin Corporation. We affirm the district court.

I

Jarema was employed by the Olin Corporation in June 1976. It was his first job after graduation from Lewis University in Illinois. As his career progressed, he moved through a variety of positions around the country. His last position was as accounting manager at the Livonia, Michigan facility, a position he held from September 1986 to March 8, 1991.

His employment with Olin had been successful. He operated in what he described as a high-level supervisory position at the Livonia facility. He had received a number of performance reviews that rated him as fully competent or superior.

On March 8, 1991 he was fired. He had been engaging in an extra-marital affair with one of his subordinates, Patty Ruth. Although there was no allegation that they were conducting the affair on company time, Olin did contend that the affair was affecting the operation and morale of the unit in which Jarema worked.

Jarema was Ruth's immediate supervisor. Ruth's confidante was Linnea Yax, secretary to Mike Murray, Jarema's supervisor. Jarema resisted efforts by Olin management to change Ruth's supervisory structure because he was seeking a promotion that required him to have at least a specified number of subordinates. It was common knowledge in the unit that the two were having an affair.

Jarema contends that Olin represented to him that he was a contract or for-cause employee, not an at-will employee. He supports that contention in two ways. First, Jarema cites a welcoming letter he received when he was first employed by Olin 15 years earlier. The text of the letter includes: "We feel that you have a great career ahead of you with Olin as it is a very dynamic and challenging company to work for. We look forward to having you as a member of our team." He contends that that letter is a promise of employment, and an implied contract that he will not be terminated without cause.

Second, Jarema says that an Olin employee handbook distributed to employees, called "You and Olin," created an environment that led the employees to believe they were in for-cause employment. The booklet included information that the employees would not be discharged without some reason. He cites the following text to support his position:

> When lapses occur resulting in a violation of facility work rules or policies, the company will administer appropriate progressive disciplinary action ranging from a verbal warning up to and including discharge depending upon the seriousness of the violation. In all cases of termination, a review of the action will be conducted by the plant manager or appropriate regional manager and/or delegate.

Jarema says that the company not only paid lip service to the policy of progressive and

proportional discipline, it actually followed it. Thus, company behavior created in Jarema an expectation that he, Jarema, could not properly be discharged without a series of warnings and imposition of increasingly severe discipline.

The ultimate conclusion Jarema draws is that he could properly be discharged only for cause. Though he insists his affair was not sufficient justification for summary discharge, it is ultimately, he claims, a jury question, and renders his case inappropriate for summary judgment.

The district court found that Jarema was an at-will employee, and that there were no material issues of fact. It thus granted summary judgment for defendant Olin Corporation, and Jarema appealed.

## II

This case is in federal court on diversity jurisdiction. Because this action arose in Michigan, Michigan's employment law is controlling.

■ In Michigan, employees hired for an indefinite period of time are considered to be at-will employees. *Valentine v. General American Credit, Inc.*, 420 Mich. 256, 362 N.W.2d 628 (1984). Even an arbitrary or capricious termination is lawful. *Hernden v. Consumers Power Co.*, 72 Mich.App. 349, 249 N.W.2d 419 (1976). However, if an employee can prove that he had a contract with the employer that he was dischargeable only for cause, the contract will control.

The Michigan Supreme Court has held that such contracts may be implied. In *Toussaint v. Blue Cross & Blue Shield of Michigan,* and the companion case, *Ebling v. Masco Corporation,* both found at 408 Mich. 579, 292 N.W.2d 880 (1980), the court found that neither employee's employment contract specified a term. Nor did the contracts explicitly state whether the employees were at-will or for-cause. But, despite the usual presumption that such contracts were at-will, the court held that neither Toussaint nor Ebling could be discharged except for cause. The court found it significant that in both cases the employees had specifically negotiated for job security, and were told that so long as they did their jobs they would not be discharged. Furthermore, in *Toussaint,* the booklet given to Toussaint by Blue Cross included the information that after employ-

ees had passed their probationary period, it was Blue Cross's policy not to release them unless there was just cause. While the booklet reserved the right to change company policies unilaterally, the court found that the aggregate of this information was enough to allow a jury to conclude that the plaintiffs had negotiated for, and obtained, some measure of job security.

In the past few years, the Michigan Supreme Court clarified *Toussaint* and *Ebling.* In *Rowe v. Montgomery Ward & Co., Inc.,* 437 Mich. 627, 473 N.W.2d 268 (1991), the court noted that, despite an employee booklet in which Montgomery Ward promised proportional discipline, Rowe was still an at-will employee. The court held that Rowe had not negotiated for job security, as had Toussaint and Ebling. The court also noted that Montgomery Ward had reserved the right to change policies, and had included information in the booklet that the employees were still considered to be at-will.

■ In this case, Olin was walking a fine line, trying to maintain the benefits of having a satisfied and secure work force while at the same time retaining its right to discharge the employees at will. Olin devised and printed a booklet called "You and Olin," distributed it to its non-Teamsters employees, and explained that the disciplinary policy called for progressive and proportional discipline. However, at the same time, the booklet reserved for Olin the right to change its policies unilaterally, and stated that the booklet in no way modified any contracts that had been entered into or negotiated between employees and the company.

As in *Rowe,* the Olin book expressly said it was not a contract, did not say Olin would terminate employees only for just cause, and specifically reserved the right to change employment terms unilaterally. There is no evidence in this case that Jarema ever negotiated for or inquired about job security, or that he received the employee handbook in response to an express request for information on job security.

■ The initial engagement letter Jarema relies on is too flimsy to support a for-cause

contract. An expression of optimistic hope for the future, written fifteen years earlier, is not determinative of the existence of a contract.

■ Absent a contract, Jarema could be fired for any nondiscriminatory reason. Thus, the validity of the reason Olin put forth, and the effect Jarema's affair had on his employment, are not relevant. Furthermore, the fact that Jarema contends that the discipline was disproportionate as compared to the offense is also not relevant.

■ We find no error in the district court's conclusion that plaintiff's "mere subjective expectancy [is] ... insufficient as a matter of law to create a just cause contract here." Therefore, we AFFIRM the district court's grant of summary judgment to Olin Corporation.